[No. 27569. Department Two. January 16, 1940.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH BIRD, *Appellant.*[1]

*John T. Raftis,* for appellant.

*F. Leo Grinstead,* for respondent.

[1]Reported in 97 P. (2d) 1076.

STEINERT, J.—This is an appeal from a judgment of conviction and sentence for violation of the state game law.

Three separate complaints were filed in the justice court of Colville precinct, Stevens county, charging the defendant with the unlawful possession of deer meat during the closed season. The first complaint charged possession of the carcass of one deer; the second contained a similar, but distinct, accusation; and the third charged possession of a part of a hind quarter of a deer. The date of the offense alleged was the same in each complaint.

Upon conviction on all three charges, defendant appealed to the superior court, where he interposed a demurrer to each complaint and at the same time moved that they be severally quashed and that the state be required to elect upon which of the three charges it proposed to stand. The demurrers were overruled, and the motions were denied. The three causes were consolidated for trial before a jury, which, after hearing the evidence, found defendant not guilty upon the first two charges, but guilty upon the third. The court pronounced judgment upon the verdict and sentenced defendant to punishment by a fine of $250 and confinement in the county jail for a period of one year; the jail sentence, however, was suspended upon payment of the fine and during good behavior. The defendant has appealed.

Appellant assigns as error (1) the overruling of his demurrers and the denial of his motions; (2) the refusal to dismiss the third complaint for insufficiency of the evidence to warrant conviction; (3) improper and prejudicial remarks alleged to have been made by the court to the jury; (4) denial of his motion for new trial; and (5) the imposition of sentence contrary to the statute.

Upon the first assignment, appellant contends that, since he was not charged in any of the complaints with killing or taking a deer, but only with unlawful possession of deer meat at one time and place, he could not be charged with three separate offenses. Respondent's answer to the contention is that, according to the procedure prescribed by Rem. Rev. Stat., § 2059 [P. C. § 9272], charges for two or more acts or transactions connected together or involving the same class of crimes may be joined in one information, under separate counts, instead of presenting them in several informations; and that, therefore, appellant suffered no greater prejudice from the consolidation and a single trial upon the three separate complaints than he would have sustained had there been one information containing the respective charges in three separate counts.

In view of the verdicts rendered by the jury, the question presented by this assignment is not now material. Appellant was acquitted upon the first two charges and found guilty only as to the third. His position is, therefore, the same as it would have been had he been acquitted upon two counts of a single information and found guilty upon a third count.

The second assignment of error requires a consideration of the evidence. The state's evidence was, in substance, as follows: On January 27, 1938, the state game protector of Stevens county received information that two deer had been killed about twelve miles east of Colville. During the late afternoon of the same day, he went to the place designated and there discovered traces of deer having been shot and afterwards hauled away. Hair and blood were found upon the road in two places about a quarter of a mile apart.

Owing to the lateness of the hour, the officer did not complete his investigation that same evening, but returned to the place the following morning. He then

found on the ground a shell of an automatic gun, and also noticed some automobile tracks in the immediate vicinity. A bloody trail, broken in places, led him to Colville. The officer, being aware that two hunters, appellant and one Alfred Buckley, were neighbors and residents in the community, drove to a lane which led to appellant's home. At the entrance to the lane, he observed the tracks of a man and of an automobile. He also found a trail leading to the home of appellant. He thereupon proceeded to Colville and procured search warrants for the Bird and Buckley premises.

Armed with such authority, and accompanied by a deputy sheriff, the game protector went first to Bird's home. In the absence of appellant, Mrs. Bird was unwilling that search be made. The officers, however, effected an entrance to the house and conducted a search. In an ice box they found the remains of a hind quarter of a deer. The color of the meat indicated to them that the animal had been butchered a few days before.

The officers then went to the Buckley house and made a search thereof, but found no deer meat. They then returned to the Bird premises and, after searching certain outbuildings, finally came to the barn, where they found eight quarters of deer suspended from hooks in the hay loft; the meat had a reddish hue and had the appearance of having been recently butchered and dressed. At the barn door they found blood and deer hair, and in a box stall inside, they saw a gambrel stick and more blood. The nine pieces of meat found on the Bird premises were seized by the officers and subsequently were introduced as exhibits on the trial.

Appellant's evidence was to the effect that the meat found in the ice box was part of a deer which had been

killed during the open season and retained for consumption; however, there was no tag or stamp upon it. He denied any knowledge concerning the eight quarters found in the barn. There was some slight evidence tending to raise an inference that unknown persons had been trespassing about the barn on the night before the search. Appellant and his wife testified that the blood and hair found in front of and inside the barn came from some calves and hogs that appellant had slaughtered a short time before. With reference to the killing of the two deer which had been reported to the game protector, appellant's testimony, as well as that of several of his witnesses, tended to establish an alibi.

There was some conflict in appellant's evidence on certain points. Both appellant and his witness Alfred Buckley testified that they had killed and divided a deer during the open season, and appellant claimed that it was part of the hind quarter of that animal which the officers had found in the ice box and upon which his conviction was rested. However, appellant testified that he shot the deer, while Buckley testified that he did the killing. Another of appellant's witnesses, Buckley's father, testified that his son had killed and dressed a buck deer during the open season and that half of it was supposed to go to Bird. On cross-examination, he stated that the deer to which he referred was killed about two weeks before January 28, 1938. Although insisting that the killing had occurred during the open season, he admitted that he did not know when the open season in 1937 ended. The fact is that the season for killing deer in that year closed October 20, 1937.

Appellant's contention upon this assignment of error is that, under the overwhelming weight of the evidence, he should not have been convicted under

Rem. Rev. Stat., § 5915 [P. C. § 2640-2] (relating, in part, to the possession of deer, or the meat thereof, unless lawfully acquired), but only, if at all, under Rem. Rev. Stat., § 5955 [P. C. § 2640-38] (relating to possession of any game animal or any part thereof, during the time when the killing of such animal is prohibited). We shall refer to those statutes more fully a little later. For present purposes, and in answer to appellant's immediate contention, it is sufficient to say that, in our opinion, the evidence was sufficient to have warranted conviction under Rem. Rev. Stat., § 5915, if the complaint had charged that the deer, or the meat thereof, had been *unlawfully acquired.* The real question presented under this assignment relates to the sentence, and will be considered under appellant's last assignment of error.

The third assignment relates to certain remarks made by the trial court when asked by the jury for further instructions. It is argued that the effect of the court's remarks was to advise the jury "that appellant could have deer meat in his possession only during the open season." The substance of the court's remarks was simply that the jury should follow the instructions which had already been given. The formal instructions are not included in the record on appeal, nor does it appear that appellant requested any instruction or excepted to any of those given by the court. We perceive no error on this assignment.

The fourth assignment of error, based upon the denial of appellant's motion for new trial, presents nothing additional to the preceding assignments and, therefore, requires no further discussion.

Under his last assignment of error, appellant contends that the penalty imposed upon him was improper, in that he could have been *sentenced* only, if at all, for a conviction under Rem. Rev. Stat., § 5955,

the penalty for which is prescribed by Rem. Rev. Stat., § 5990 [P. C. § 2640-63]. This contention must be sustained. Our conclusion upon this question is based upon a consideration of the sections of the statute to which reference was briefly made in dealing with appellant's second assignment of error.

Rem. Rev. Stat., § 5915 (Laws of 1925, Ex. Ses., chapter 178, p. 521, § 57, as amended by Laws of 1929, chapter 221, p. 602, § 6), in so far as it is material here, provides:

"It shall be unlawful for any person to hunt, kill, . . . take, . . . or have in possession or under his control at any time any . . . deer, . . . or the meat thereof, . . . *unless lawfully acquired:* Provided, That any person having in force a hunting license issued under the provisions of this act may kill, . . . take, . . . and have in his possession for his personal use between the fifteenth day of September and the fifteenth day of November in any year, one buck deer with visible horns, killed, caught or taken in the manner provided by law: . . . *Any person violating the provisions of this section shall be guilty of a gross misdemeanor and shall be punished by a fine of not less than $250.00 . . . or by imprisonment in the county jail for not more than one year or by both such fine and imprisonment. . . .* " (Italics ours.)

Rem. Rev. Stat., § 5955 (Laws of 1925, Ex. Ses., chapter 178, p. 534, § 93), so far as material here, provides:

"It shall be unlawful for any person to have in his possession or under his control any . . . game animal . . . or any part thereof, the killing of which is at any time prohibited, during the time when such killing is prohibited, and the possession of same shall be prima facie evidence that it was the property of the state at the time it was caught, taken or killed in this state when the killing was unlawful and that such taking or killing occurred in the closed season: Pro-

vided, that any person lawfully in the possession of any . . . game animal, . . . or any part thereof, and desiring to retain the same for human consumption or ornamental purposes, after the close of the season when the same was lawfully taken, may do so by furnishing the county game commission of the county wherein he desires to retain the same, a true and correct description thereof, giving the number, kind or kinds, and designating the place where the same is stored with reasonable certainty, and the game commission or county game-warden shall have authority to tag or stamp the same for the purpose of identification. . . ."

This section, it will be noted, contains no provision fixing the penalty for the offense. However, Rem. Rev. Stat., § 5990 (Laws of 1925, Ex. Ses., chapter 178, p. 544, § 118, as amended by Laws of 1927, chapter 258, p. 603, § 26), provides that, where no specific penalty is fixed for the violation of any particular provision of the act, the violator shall be guilty of a misdemeanor and punished by a fine of not less than ten dollars and costs of prosecution, or by imprisonment in the county jail for not more than ninety days, or by both.

Parenthetically, it should be observed that Rem. Rev. Stat., §§ 5915 and 5955, were apparently repealed and no longer remain in force as statutes, but, nevertheless continue in effect and operate as rules and regulations of the state game commission, of which the court may take judicial notice. Laws of 1933, chapter 3, p. 30, § 13 (Rem. Rev. Stat. (Sup.), § 5855-7 [P. C. § 4-107g]); *State v. Smith,* 197 Wash. 363, 85 P. (2d) 651. However, no question in that regard is presented in this case.

Reverting to the thread of our discussion, we note that Rem. Rev. Stat., § 5915, has reference to the possession of deer, or the meat thereof, which has been *unlawfully acquired,* while Rem. Rev. Stat., § 5955,

has reference to the possession of game animals, or any part thereof, during the time when the killing of such animal is prohibited.

The offense with which appellant was charged by the third complaint was not that of possession after unlawful acquisition, but merely of possession during the prohibited period. He was found guilty of the offense thus charged. He should, therefore, not have been sentenced for a gross misdemeanor, as provided by Rem. Rev. Stat., § 5915, but only for the violation of Rem. Rev. Stat., § 5955. Since the latter section prescribes no specific penalty, the offense is punishable as a misdemeanor, under Rem. Rev. Stat., § 5990.

The judgment of sentence is reversed, and the cause will be remanded for sentence in accordance with the views herein expressed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.